IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID M. LEDESMA, | No. CIV.S-04-1398 DAD |
| Plaintiff, | |
| v. | ORDER |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and/or remand and defendant's cross-motion for summary judgment. For the reasons explained below, the decision of the Commissioner of Social Security ("Commissioner") is reversed and this matter is remanded for further proceedings.

**PROCEDURAL BACKGROUND**

Plaintiff David M. Ledesma applied for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of

1

the Social Security Act (the "Act"), respectively. (Transcript (Tr.) at 342-44, 813-15.) The Commissioner denied plaintiff's applications initially and on reconsideration. (Tr. at 311-14, 320-25, 816-19, 821-26.) Pursuant to plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on May 21, 2002, at which time plaintiff was represented by counsel. (Tr. at 840-84.) The ALJ conducted a supplemental hearing on September 3, 2002. (Tr. at 885-913.) In a decision issued on January 17, 2003, the ALJ determined that plaintiff was not disabled. (Tr. at 30-51.) The ALJ entered the following findings in this regard:

1. The period ending July 22, 1998 has previously been adjudicated.

2. The claimant met the disability insured status requirements of the Act on July 22, 1998, and continued to meet them through December 31, 1999.

3. The claimant has not engaged in substantial gainful activity since July 22, 1998.

4. The medical evidence establishes that the claimant has severe degenerative joint disease of the left foot, hypertension, seizure disorder, and generalized anxiety disorder, but that he does not have an impairment or combination of impairments listed in, or equivalent in medical severity to one listed in, Appendix 1, Subpart P, Regulations No.4.

5. The allegations of the claimant and his friend are not credible.

6. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work, except: he can lift and carry up to ten pounds

2

occasionally; he can stand/walk up to six hours in a workday; he can occasionally climb, balance, stoop, kneel, crouch, and crawl; contact with the public is to be limited; the claimant must avoid unprotected heights and moving machinery (20 CFR 404.1545 and 416.945).

7. The claimant is unable to perform his past relevant work.

8. The claimant's residual functional capacity for the full range of sedentary work is reduced by the following limitations: he can occasionally climb, balance, stoop, kneel, crouch, and crawl; contact with the public is to be limited; the claimant must avoid unprotected heights and moving machinery.

9. The claimant is 49 years old, which is defined in the regulations as "young" (20 CFR 404.1563 and 416.963).

10. The claimant has a 12th grade education (20 CFR 404.1564 and 416.964).

11. Transferability of acquired work skills is not material to this decision.

12. If the claimant had the residual functional capacity to perform the full range of sedentary work, given his age, education, and work experience, section 404.1569 of Regulations No.4 and section 416.969 of Regulations No. 16, and Rules 201.21 and 201.22, Table No. 1, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

13. The claimant's capacity for the full range of sedentary work has not been significantly compromised by additional nonexertional limitations. Accordingly, using the above-cited rules as a framework for decisionmaking, the claimant is not disabled.

3

       14.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through December 31, 1999 (20 CFR 404.1520(f)).

       15.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(f)).

       16.   The claimant has mild restrictions in activities of daily living, moderate difficulties in social functioning, mild deficiencies in concentration, persistence, or pace and no episodes of decompensation.

(Tr. at 49-50.) The Appeals Council declined review of the ALJ's decision on May 26, 2004. (Tr. at 9-12.) Plaintiff then sought judicial review, pursuant to 42 U.S.C. § 405(g), by filing the complaint in this action on July 8, 2004.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

4

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively presumed disabled. If not, proceed to step four.

/////

5

>     Step four: Is the claimant capable of performing
>     his or her past work?  If so, the claimant is not
>     disabled.  If not, proceed to step five.
>
>     Step five: Does the claimant have the residual
>     functional capacity to perform any other work?
>     If so, the claimant is not disabled.  If not, the
>     claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances three arguments in his motion for summary judgment and/or remand.  First, plaintiff asserts that the ALJ erred in rejecting the opinion of plaintiff's treating physician, family practitioner Frederick R. Krueger, D.O.  Second, plaintiff maintains that the ALJ improperly assessed the opinion of an examining psychiatrist, Alberto G. Lopez, M.D., as well as the opinion of a nonexamining state agency physician, Marie Morando, M.D., who evaluated plaintiff's mental residual functional capacity.  Third, plaintiff argues his numerous nonexertional limitations precluded the ALJ's use of the Medical-Vocational guidelines (the "grids") in finding plaintiff not disabled.  The court addresses plaintiff's arguments below.

Regarding plaintiff's arguments concerning the ALJ's evaluation of certain medical opinions in the record, the Ninth

6

Circuit Court of Appeals has identified the three types of physicians seen in social security cases as follows: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester, 81 F.3d at 830 (footnote omitted). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Id. (citing Winans v. Baxter, 853 F.2d 643, 647 (9th Cir. 1987)). Accordingly, when not contradicted by the opinion of another doctor, the opinion of a treating physician can be rejected only for clear and convincing reasons. Id.; Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the opinion of a treating physician is contradicted, that opinion can be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Id.; Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990) and Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984)). Like a treating physician's opinion, the uncontradicted opinion of an examining physician can only be rejected for clear and convincing reasons. Id. (citing Pitzer, 908 F.2d at 506). Even if an examining physician's opinion is contradicted, specific and legitimate reasons must be given for rejecting it. Id. at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

1        The opinion of a nonexamining physician is entitled to the
2   least weight.  Id. at 831.  "The opinion of a nonexamining physician
3   cannot by itself constitute substantial evidence that justifies the
4   rejection of the opinion of either an examining physician or a
5   treating physician."  Id. (citing Pitzer, 908 F.2d at 506 n.4;
6   Gallant, 753 F.2d at 1456)(emphasis in original).

7        With respect to the opinion of plaintiff's treating
8   physician, Dr. Krueger, the parties appear to disagree whether Dr.
9   Krueger's opinion is "uncontradicted," such that the ALJ was required
10  to set forth "clear and convincing" reasons in rejecting it, or
11  "contradicted" such that "specific and legitimate" reasons based on
12  substantial evidence were required. Nonetheless, the court finds that
13  the ALJ's reasoning as to Dr. Krueger's opinion withstands scrutiny
14  under either standard.

15       On April 19, 2002, Dr. Krueger completed a Residual
16  Functional Capacity Questionnaire with respect to plaintiff's
17  condition relating to seizures.  In sum, the questionnaire indicates
18  that since the onset date of September 14, 1998, plaintiff has
19  experienced grand mal seizures occurring at a frequency of 2 to 4 per
20  month; lasting about 10 minutes each; and involving postictal
21  manifestations of confusion, exhaustion and severe headaches lasting
22  between 6 and 24 hours.  (Tr. at 807-11.)  However, as the ALJ
23  recognized, the frequency and severity of plaintiff's seizure as
24  reflected in the form completed by Dr. Krueger are wholly unsupported
25  by the doctor's treatments notes or the treatment notes prepared by
26  other physicians at San Joaquin General Hospital.  Specifically, a

1  August 20, 1999, treatment note states "no recent seizure activity."
2  (Tr. at 419.)  A November 4, 1999, note states that plaintiff's last
3  seizure was a petit mal seizure in September, 1999.  (Tr. at 417.)  A
4  January, 7, 2000, treatment note indicates "no seizure activity since
5  11/99." (Tr. at 416.)  A note dated March 10, 2000, reflects one
6  seizure occurring in February, 2000.  (Tr. at 415.)  A May 18, 2000,
7  note states "no seizure activity since February."  (Tr. at 414.)  A
8  September 21, 2001, note indicates that plaintiff had a "seizure last
9  month." (Tr. at 600.)  A December 31, 2001, note states plaintiff
10 experienced two seizures since his last visit.  (Tr. at 596.)  A
11 April 12, 2002, note reflects one seizure.  (Tr. at 780.)  Other
12 notes covering April and May, 2002, reflect no additional seizures
13 suffered by plaintiff.  (Tr. at 772, 775, 778.)  Several other
14 treatment notes from San Joaquin General Hospital since 1998 also
15 reflect no complaints of seizure.

16        Accordingly, the court finds that the ALJ appropriately
17 rejected Dr. Krueger's opinion that plaintiff has suffered 2 to 4
18 grand mal seizures per month since 1998.

19        The court also finds that the ALJ sufficiently stated
20 specific and legitimate reasons based on substantial evidence in
21 giving little credit to the opinion of Dr. Lopez, an examining
22 psychiatrist who reviewed plaintiff's records and examined him on
23 April 30, 2002.  (Tr. at 783-98.)  In this regard, the ALJ accurately
24 indicated that the results of Dr. Lopez's examination were
25 contradicted by plaintiff's mental health treatment notes, which the
26 ALJ discussed in some detail.  (Tr. at 44-46, 568-94, 481-90.)  The

1  ALJ also correctly found that the findings of Gagan Dhaliwal, M.D.,
2  another examining psychiatrist, contradicted the findings of Dr.
3  Lopez.  (Tr. at 516-19.)  In his decision, the ALJ further noted
4  plaintiff's educational achievements, up to and including plaintiff's
5  pursuit of a masters degree in history, which suggest that some of
6  the extreme limitations assessed by Dr. Lopez are unjustified.  For
7  example, while the most recent treatment note in the record from San
8  Joaquin County Mental Health Services indicates that plaintiff is in
9  some physical pain and "having some increased anxiety due to
10 situational stress," the note indicates that plaintiff was accepted
11 into the graduate program at Stanislaus State University; that "he is
12 doing well;" and that "he is optimistic and hopeful."  (Tr. at 570.)
13 Finally, with respect to plaintiff's claim for Title II benefits, the
14 ALJ also observed that Dr. Lopez did not examine plaintiff until more
15 than two years after his date last insured of December 31, 1999.
16         For these reasons, the court finds that the ALJ
17 sufficiently articulated specific and legitimate reasons based on
18 substantial evidence in discounting the opinion of Dr. Lopez.
19 Plaintiff's argument to the contrary is rejected.
20         On the other hand, the court is persuaded by plaintiff's
21 argument regarding the ALJ's treatment of the opinion of Dr. Morando,
22 a nonexamining state agency physician who evaluated plaintiff's
23 mental health.  (Tr. at 550-67.)  It is undisputed that the ALJ
24 failed to mention or discuss Dr. Morando's findings in his decision.
25 Assuming that the ALJ implicitly rejected those findings, the court
26 is unable to meaningfully review the ALJ's decision in this regard.

See <u>Vista Hill Foundation, Inc. v. Heckler</u>, 767 F.2d 556, 559 (9th Cir. 1985)("an agency's decision can be upheld only on a ground upon which it relied in reaching that decision").  Additionally, Dr. Morando's findings indicate that plaintiff is moderately to mildly impaired in several ways.  If those findings were credited, nonexertional limitations beyond the requirement that plaintiff have limited contact with the public would have to be included in any residual functional capacity determination.[1]  Thus, the court cannot conclude that the ALJ's failure to address Dr. Morando's findings is harmless error as defendant argues.  Reversal and remand therefore is required to allow the ALJ to expressly consider the impact, if any, of Dr. Morando's findings.

Finally, plaintiff also persuasively argues that because of plaintiff's alleged nonexertional impairments the ALJ should have utilized testimony from the vocational expert who testified at plaintiff's hearing.  At the fifth and final step of the sequential evaluation process, the Commissioner can satisfy the burden of showing that the claimant can perform other types of work in the national economy, given the claimant's age, education, and work

---

[1] In this regard, Dr. Morando found that plaintiff was moderately limited in his abilities to understand and remember detailed instructions and to carry out such instructions and was somewhat limited in his ability to perform activities within a schedule, maintain regular attendance and be punctual.  (Tr. at 550.)  Dr. Morando also found plaintiff to be mildly to moderately limited in the activities of daily living, maintaining social functioning and in maintaining concentration, persistence or pace.  (Tr. at 564.)  While limiting plaintiff's contact with the public would address his limitations with respect to maintaining social functioning, it would not address the remainder of the limitations which Dr. Morando found to be present.

11

experience, by either (1) applying the Medical-Vocational Guidelines (the "grids") in appropriate circumstances or (2) taking the testimony of a vocational expert ("VE").  See Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988); Burkhart, 856 F.2d at 1340 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring)).

The grids are designed to show available work in the national economy for individuals with exertional (i.e., strength) limitations, as impacted by the factors of age, education, and work experience.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(d) & (e). They may be utilized as long as they "accurately and completely describe the claimant's abilities and limitations."  Burkhart, 856 F.2d at 1340 (citing Jones, 760 F.2d at 998).  See also Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1998); 20 C.F.R. Pt. 404, Subpart P, App. 2, § 200.00(b).  However, when a claimant's nonexertional limitations are sufficiently severe to significantly limit the range of work permitted by exertional limitations, the grids are inapplicable.  See Burkhart, 856 F.2d at 1340; Desrosiers, 846 F.2d at 577; see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).

In arguing that the ALJ erred in relying on the grids, plaintiff asserts that the ALJ should have utilized testimony from the vocational expert due to plaintiff's numerous nonexertional limitations.[2]  The court agrees.  The ALJ found plaintiff's capacity

---

[2] A vocational expert testified at some length at the initial and supplemental hearings, although the ALJ ultimately chose to rely on the grids in finding plaintiff not disabled.

12

for the full range of sedentary work to be reduced by a number of nonexertional impairments.[3] (Tr. at 50.) According to the ALJ, plaintiff can only occasionally climb, balance, stoop, kneel, crouch and crawl; plaintiff must have only limited contact with the public; and plaintiff must avoid unprotected heights and moving machinery (i.e., take the usual seizure precautions). (Id.) The court recognizes that in some instances the presence of one of these nonexertional limitations would not necessarily require vocational expert testimony. For example, requiring a claimant to have only limited contact with the public thereby restricting that claimant to unskilled work[4] -- a type of work experience expressly contemplated by the grids -- might sufficiently account for that nonexertional

/////

/////

/////

/////

---

[3] "Nonexertional limitations are non-strength related limitations. These include mental, sensory, postural, manipulative, and environmental limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.7 (9th Cir. 1989)(citations omitted).

[4] Unskilled work is defined as work which "needs little or no judgment to do simple duties that can be learned on the job in a short period of time.... [L]ittle specific vocational preparation and judgment are needed." 20 C.F.R. §§ 404.1568(a), 416.968(a). In addition, "the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) ...." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(g). See also Social Security Ruling No. 85-15, 1985 WL 56857, at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.").

limitation such that the grids may still be relied upon.[5]  However, the court is aware of no authority supporting use of the grids in a situation where, as here, there are numerous nonexertional limitations reducing the full range of sedentary work.  Indeed, Ninth Circuit authority counsels to the contrary.  See Cooper, 880 F.2d at 1156 n.10 ("However, if she were not capable of doing the full range of medium work because of a nonexertional impairment, then the ALJ would not be allowed to rely solely on the grids to direct a finding of not disabled."); Bellamy v. Sec'y of Health & Human Servs., 755 F.2d 1380, 1383 (9th Cir. 1985)("The record here reveals several significant non-exertional impairments (pain, nausea, dizziness, and fainting) that precluded sole reliance on the grids.").  Therefore, because plaintiff has many nonexertional limitations, the court finds that the grids do not accurately and completely describe plaintiff's abilities and limitations.  Remand is also required so that the ALJ can utilize the testimony of a vocational expert at step five of the sequential evaluation.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment and/or remand is granted in part and denied in part;

---

[5] See, e.g., Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 526 (1st Cir. 1989) ("[S]o long as a nonexertional impairment is justifiably found to be substantially consistent with the performance of the full range of unskilled work, the Grid retains its relevance and the need for vocational testimony is obviated."); Brown v. Apfel, 71 F. Supp. 2d 28, 37 (D. R.I. 1999), aff'd 230 F.3d 1347 (1st Cir. 2000); Guyton v. Apfel, 20 F. Supp. 2d 156, 162 (D. Mass. 1998).

14

1     2.  Defendant's cross-motion for summary judgment is
2 granted in part and denied in part; and
3     3.  The decision of the Commissioner of Social Security is
4 reversed, and this case is remanded for rehearing consistent with the
5 analysis set forth herein.  See 42 U.S.C. § 405(g), Sentence Four.
6 DATED: September 28, 2005.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:th
ddad1\orders.socsec\ledesma1398.order.v2

15